NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE
# ARIZONA COURT OF APPEALS
## DIVISION ONE

ANGEL G., *Appellant,*

*v.*

DEPARTMENT OF CHILD SAFETY, R.G., *Appellees.*

No. 1 CA-JV 18-0124
FILED 8-23-2018

Appeal from the Superior Court in Maricopa County
No. JD35110
The Honorable Cari A. Harrison, Judge

**AFFIRMED**

COUNSEL

Robert D. Rosanelli Attorney at Law, Phoenix
By Robert D. Rosanelli
*Counsel for Appellant*

Arizona Attorney General's Office, Phoenix
By JoAnn Falgout
*Counsel for Appellee Department of Child Safety*

---

**MEMORANDUM DECISION**

Judge Randall M. Howe delivered the decision of the Court, in which Presiding Judge Jon W. Thompson and Judge James B. Morse Jr. joined.

---

H O W E, Judge:

¶1      Angel G. ("Father") appeals the juvenile court's order adjudicating his child R.G. dependent. For the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶2      In November 2017, a police officer saw Father driving a pickup truck and having difficulty staying in his driving lane; the truck touched the driving lane's markers three times within one block. The officer also saw a child in a car seat in the truck bed. The officer stopped Father to perform a child-welfare check and saw that the child in the car seat was not buckled in and that the seat was not affixed to the truck. He also saw another child hiding near the right front portion of the truck bed. The officer smelled a strong odor of marijuana when he approached, and Father admitted that he was a medical marijuana user and that he had just smoked marijuana. The officer arrested Father for child endangerment. As the officer did so, he saw two-year-old R.G. seated in Father's truck on the bench seat with no restraints or child seat.

¶3      In a search incident to arrest, the officer found a bag containing marijuana. He also saw that Father moved lethargically, had bloodshot and watery eyes, and had slow eye movement. When another officer arrived at the scene, he also smelled a strong odor of marijuana coming from the truck and Father and also saw Father's bloodshot and watery eyes. The officers later charged Father for possession of marijuana and aggravated driving under the influence in addition to child endangerment. Father had a medical marijuana card, but a computer database showed that the card had expired and no new cards were on file.

¶4      The Department of Child Safety received an incident report from the police and responded the next day. The children reported they were afraid of Father and that he was a transient, had a bad temper, and frequently used marijuana inside their home. Father did not cooperate with the investigating case worker and denied the information in the police

officers' charges and reports. The Department found that Father had been involved with the Department before, noting that it had substantiated reports that he had exposed his older children to domestic violence and had consumed alcohol and pulled his gun out while his older children were in his home.[1]

¶5         The Department interviewed R.G.'s mother ("Mother") shortly after the incident.[2] She reported that she had been moving from state to state with Father and that he had abused her by punching, kicking, and strangling her. She also stated that Father had assaulted her in front of his older children while Mother was pregnant with R.G. and in front of R.G. after his birth. She further asserted that Father sometimes became violent with R.G., which required her to intervene. She added that Father often smoked marijuana in R.G.'s presence and became violent with her if she asked him to not do so. Mother explained that she had left R.G. in Father's care because she was homeless and unable to care for him. She also reported that while R.G. was in Father's care, she had seen pictures of R.G. with facial injuries and riding unrestrained in Father's truck.

¶6         That same day, the Department removed R.G. from Father's care and moved for dependency. It alleged that R.G. was dependent because (1) Father was unable or unwilling to provide proper and effective parental care and control, (2) he had neglected R.G. by failing to provide safe and appropriate housing and supervision, (3) he used marijuana in R.G.'s presence, and (4) he had a history of engaging in domestic violence in R.G.'s presence.

¶7         In December 2017, the Department reported that Father had threatened to kidnap R.G. by force if necessary, had been so aggressive that he could not participate in the initial team decision-making meeting, had resisted all services except visitation, and had generally been uncooperative. As a result, the Department moved to suspend Father's visitation. The court temporarily suspended his visitation and later, after an evidentiary hearing, ordered therapeutic visitation in a supervised setting.

¶8         At the dependency adjudication hearing in March 2018, Father testified and admitted that he had been arrested in November 2017, but denied the allegation that his children were riding in the truck bed

---

[1]     Father's older children are not parties in this appeal.

[2]     The court later found R.G. dependent as to Mother, but she is not a party to this appeal.

unrestrained. He also denied that he was smoking marijuana and claimed that he only consumed edible marijuana. He further testified that he thought driving while R.G. was not in a child seat was safe as long as he was not speeding or driving on a freeway. He also stated that he had a medical marijuana card and used marijuana to stop his epileptic seizures. He later clarified that marijuana stopped epileptic seizures already in progress rather than prevented them.

¶9 Regarding the domestic abuse allegations, Father admitted that he had been reported for abusing Mother and had been arrested for aggravated assault and domestic violence. He later denied that he had ever physically assaulted Mother. When asked about his prior substantiated reports with the Department, Father claimed multiple times that the files were "false."

¶10 After hearing the evidence, the court found that Father had driven his truck while under the influence of marijuana and had not properly restrained his children, including R.G. The court noted that Father's failure to put R.G. in a child seat created a "very unsafe condition." It further stated that Father's failure to recognize the unsafe condition was another reason to find R.G. dependent. The court also found that Father's use of his truck with his children inside was a concern because he could experience an epileptic seizure while driving. The court further found that several substantiated reports showed Father's domestic violence history. It also noted that he provided no evidence that he had completed a domestic violence counseling class and had declined to participate in any services with the exception of visitation. Thus, the court concluded that the Department had proven by a preponderance of the evidence that R.G. was dependent as to father. Father timely appealed.

## DISCUSSION

¶11 Father contends that the Department did not provide sufficient evidence to support the court's finding that R.G. was dependent. "The petitioner's burden of proof in a dependency proceeding is a preponderance of the evidence." *Willie G. v. Ariz. Dep't of Econ. Sec.*, 211 Ariz. 231, 232 ¶ 2 (App. 2005). Because the juvenile court is in the best position to observe the parties, judge the credibility of witnesses, and resolve disputed facts, this Court will not reweigh the evidence. *Jordan C. v. Ariz. Dep't of Econ. Sec.*, 223 Ariz. 86, 93 ¶ 18 (App. 2009). We will not disturb a dependency adjudication unless no reasonable evidence supports it, and we view the evidence in the light most favorable to sustaining the juvenile

court's decision. *Id.* Because sufficient evidence supports the court's dependency finding, the court did not err by finding R.G. dependent.

**¶12** Here, the record shows that Father drove his truck while under the influence of marijuana and with his children unrestrained. Father did not recognize the inherent danger involved in driving while under the influence of marijuana with his children in the truck. He also did not recognize the danger of having his children unrestrained while he drove his truck. Father also engaged in domestic violence on multiple occasions, including in R.G.'s presence. Despite the substantiated reports of domestic violence, Father did not provide any evidence that he had completed domestic violence classes. As such, sufficient evidence supports the court's finding that R.G. was dependent as to Father.

**¶13** Father argues that the Department's allegation that he failed to provide R.G. with the necessities of life because he was a transient and moving between three states was incorrect because he had testified that he had housing, employment, and his Oklahoma home had not been inspected. This argument fails, however, because the court did not rely on those allegations in finding R.G. dependent.

**¶14** Next, Father contends that he was justified in transporting R.G. out of his car seat because he testified that R.G. had urinated himself while in the seat and to leave him in the seat would have been neglectful. He also claims that he testified that his two older children in the truck bed were in seats with seatbelts. Assuming Father's testimony was true, a urine-soaked car seat does not justify his driving his truck while under the influence of marijuana with R.G. unrestrained. Furthermore, accepting Father's statement that the older children were wearing seatbelts, the children were still in danger because evidence showed that the seats in the truck bed were not actually affixed to the truck. Moreover, the court noted that Father's inability to recognize that his actions were unsafe further justified R.G.'s dependency. As such, this argument is not persuasive.

**¶15** Father also argues that the allegation of neglect due to substance abuse cannot stand because he has a medical marijuana card and uses it to treat his epilepsy. He further notes that he testified that he did not use marijuana before the police officer stopped him. The record shows, however, that Father's medical marijuana card was expired at the time he was stopped, and the court heard evidence that Father had admitted that he had smoked marijuana before he drove his truck and that he exhibited signs of impairment when the officers stopped his truck. The court also noted that marijuana stops Father's seizures rather than prevents them and

found that Father's driving of his truck with children inside created a dangerous condition because he could experience a seizure while driving. Thus, this argument fails.

**¶16**          Last, Father contends that the court should not have found R.G. dependent based on his domestic violence history because he denied that any domestic violence occurred. The record shows, however, that Mother had reported to the Department that Father had physically abused her and had abused her in front of R.G. She also reported that Father was sometimes violent with R.G., which required her to intervene. This argument is meritless.

**CONCLUSION**

**¶17**          For the foregoing reasons, we affirm.



AMY M. WOOD • Clerk of the Court
FILED:  AA